This is the last day of our Jacksonville sitting and I know I can speak for the rest of us, for Judge Grant and for Judge Hull and Judge Dubina who finished up yesterday that were very happy to have been here and as always were treated wonderfully. So we had a good time here during our stay in the north of Florida. You know the lighting system, when the yellow light goes on that means your time is drawing to a close, so try to finish up your remarks. If we take you beyond the red light then don't worry, just keep going. You're on our time and not yours. And with that we'll begin with our first case, two consolidated cases, number 17-14387 and 18-12866, both United States v. John Stahlman. Mr. Langes. Thank you, good morning. I hope this past week has been eventful. If I am the trial lawyer in this case, if I am the defendant's counsel, I would want to know the government's disciplinary background, especially when it involves a Department of Homeland Security investigation into child pornography offenses. I would submit, Your Honors, that this case boils down to, amidst everything that has been raised on direct appeal, to essentially a trial issue, which our position is should have been raised pre-trial in this particular instance, and that is this notion of agent hires, disciplinary background. Obviously it was disclosed after trial, after sentencing, and we were left in a position to ask for a new trial in the court. Below and by grace of this court, the district court was given an opportunity to address that. In terms of standards of review, I think that the government and Mr. Stahlman agree that we do have error there and a preliminary notion is in terms of remedy. However, if, given this information properly and timely, at least as a trial lawyer, I would have at least gone to the district court ahead of time and said, well, Your Honor, I have received these cover letters. I would like to at least have a look at agent hire's disciplinary background. I want a chance to look at the files. In terms of having a motion to compel, the district court may have granted that or denied it. If it grants it, we have an opportunity for full and fair discourse in terms of what the government star witness has to do in this case. If the district court denies that, that might be an issue for appeal, but then that lends itself to the next question, maybe perhaps in a motion to eliminate, Your Honor, I would like to ask agent hire about his disciplinary background during the course of trial. Isn't this one of those cases where given the nature of the disciplinary infraction and given the nature of the evidence presented against your client, the failure to turn it over, no doubt in my mind, was not material? I mean, the bulk of the testimony before Mr. Stallman testified were the exchanges between him and the person that he thought the agent was on the other side. That is not going to change, even if you're able to impeach the defendant earlier on, right? So how do you prevail on that theory? That's the astute observation, Your Honor, because that is the question we present for the court. Is this information material as a legal matter, as a matter of law? Our position is that yes. As a defense lawyer, I would want to have this information because at a minimum There's no doubt. This is my personal opinion. I speak only for myself and not for my two colleagues. You should have had this information given when the misconduct took place and when the discipline took place and when this trial took place. You should have had it. The question is what, if any, is the remedy now? That's what you were talking about. Well, the remedy, specifically, I think the short answer, if I can, Your Honor, the remedy would be, I would hope, send the case down for remand. Let's give the district court an opportunity in the first instance to apply the correct standard and address the motion of a new trial in this instance. I would ask that we have an evidentiary hearing. I would ask either that we be allowed to look at these materials to see if they lead to other admissible information. I don't know what's in there. All that we're really dealing with here are three cover letters, essentially, from the government in November, December, and January of last year. So I'd like the opportunity to look at the files to see if there's anything else in there. If not, at least have the district court, on its own, in camera examine that information to determine whether or not there's something that leads to other admissible evidence or whether it's something else that leads to our ability to craft a defense or at least lead us into a trial preparation in terms of preparing a cross-examination, preparing a defense. I know at a minimum, in terms, I keep using that word, but I know at a minimum, my consultations with Mr. Stallman would be, listen, you have a right to testify on your own behalf. Now, factually, in this case, he did that. But pretrial, in this case, I would suggest to him, look, my advice to you is not to invoke that right. Don't testify. Your defense is already out there. At the time of your arrest, you already explained that you thought this was role play. You thought that this was fantasy. So now you have a question of intent. You have the defendant's side of the facts of these emails that were there, and then you obviously have the government's interpretation of what was going on here. So the remedy is to send the case down in the first instance. Now, I know that the government is suggesting and saying that, no, we don't have to do that. Even though the district court, we all agree, used the wrong standard of review, it's harmless. And so that this court can decide the most in the first instance under the correct standard. If the court decides to do that, then you're left, Judge Jordan, with your observation that the only question here is materiality. What can we do in terms of having this information? There was a bulk of information that we could have gone forward on in terms of, one, consulting Mr. Stelman about whether to testify or not, my preparation of cross-examination. The information may, just solely on what we have right now, procedurally, because I don't know what's in the files. I don't know anything additional above and beyond what the government's already given me. At this point, what I have, at least, is the ammunition, if you will, for cross-examination to ask agent higher about this disciplinary background. And the reason why I think it's relevant, the reason why I would suggest that it's 401, 402, and doesn't invade the province of 403, if you will, is that under 607, I, as the defendant, get to cross-examine the government star witness to undercut, in terms of elements of intent, to undercut the veracity, reliability, the construct of this type of investigation, the credibility, obviously, of the witness that we have going forward, which lends me the opportunity, at least in cross-examination, or I should say closing argument, that I can make a reasonable inference argument to the jury to suggest, listen, in this instance, you have two points of view. We have the emails here. I think there were something like 125 emails going back and forth. You can take the intent, the mens rea of Mr. Stallman, which is an element of this offense, and you can weigh it against the veracity or reliability or credibility of the government's theory of prosecution, because on the one hand, Mr. Stallman explains, look, this is role play, this is fantasy. If you don't believe that, then you are free and allowed to find him guilty, if you will, if you are convinced that the government has proved its case beyond a reasonable doubt. On the converse of all of this, I would suggest, what rule here prevents me, as the trial attorney, from asking the question? Right now, today, as I stand before your honors, the only thing I can do in terms of admissibility, if you will, is to ask Agent Hire, isn't it true that you were sanctioned for FBI policy violations in terms of opening up independent, at-home child pornography offenses, for which a separate federal agency actually investigated you for child porn offenses? Now, in terms of actually grabbing what I can for purposes of closing argument, is it unfair to say that I don't get to ask Agent Hire that question? Did you ask for any further discovery when you moved for a new trial or preliminary to moving for a new trial? I hope I did, your honor. When I filed that motion in the district court, I asked for an evidentiary hearing. I asked for the ability to have my— The hearing I know you asked for. I don't remember whether or not there was a request within the motion or outside of the motion for discovery related to the disclosure. Yes. No, I never labeled anything as a motion to compel, but with the language in that motion, I said, I like kind of essentially what I've told your honors today. I like the opportunity to look at the files myself. If you're not going to do that, at least in camera, you should look for the information yourself. The point in terms of materiality, obviously, is with the evidence under Brady, if you will, or even from out of Rule 16, is there a reasonable probability that the outcome of the proceedings would have been different? In terms of our— It seems to me that your best procedural argument is the district court clearly applied the wrong standard. Yes. A new trial, grant or denial, is reviewed under an abuse of discretion standard. Yes. In order for us to provide appropriate review, you should let the court that gets the discretion make the right call under the right standard. Yes. We'll send it back and let it be done the right way, and we'll see what happens. Yes. If that is where we're at this point— What standard? That's just an articulation of your best argument. I'm not saying that's what I believe or what the court's going to do. You've done a much better of it than I, your honor. What standard did the district court apply? A motion for new trial in terms of weight of the evidence, which was obviously something— The district court, I should say, fell or mistakenly weighed Agent Heyer's testimony. Did she do a written order, or was it just a ruling from the bench? Written order, two and a half page written order. We can close that. Having said all of that, in terms of the materiality question, properly, the information should have been disclosed ahead of trial. We should have had the opportunity to litigate this information pre-trial, because at a minimum, at the end of the day, the mantra's going to be— Did you ask in your brief on appeal for just a remand for have the district court apply the right standard? Is that something? Because if so, I missed it. No, your honor. Did you ask for that on appeal in your brief? In my reply brief, I suggested the two things. Either we can remand it to the district court for application of the correct standard, or I'm anticipating that the government's argument is no, keep it here. You all decide the motion for trial. My question is, in your first blue brief, did you ask for what you're asking for now? Yes. You did in the first brief. No, no. There were two briefs. There was appeal. I call it appeal 17, which raised the first five issues, and then we had the motion for And that's where you ask in the first brief there for a remand to apply the correct standard, as opposed to some other relief. Yes, your honor. I think if I'm asking—if I understand your question properly, yes, yes. All right, thank you very much. You've saved your time for rebuttal. Ms. Rhodes, good morning. Good morning. May it please the court. I think in your exchange with Mr. Langs, Judge Jordan, you hit the nail on the head. The key issue here is the materiality as to whether the suspension, the sanction by the FBI of Agent Heyer for violating an internal policy with regard to use of a computer would make a difference in the prosecution of Mr. Stallman by the And the answer to that question is no. Why isn't the appropriate thing to do to send it back to the district court, which decides this under a discretionary standard when it comes back up, and let it make the call under the appropriate standard? I mean, everybody agrees the district court got that standard wrong. It was not a weight of the evidence motion for a new trial. It was a motion for a new trial based on an alleged lady violation. Why not send it back and let it be done the right way? Well, the Hernandez case says that this court need not do that. Why not? I know. If, viewing the record, this court can determine that there was no harm in the resolution of the case. If the court didn't abuse its discretion in denying relief, then there's no need to send it back. How can you apply the abuse of discretion standard? Well, let me say this. Isn't one of the definitions of abuse of discretion that the court applied the wrong standard? Yes. So there's error here. Yes, and in the Hernandez case, this court said that you can overlook the error, and this court should overlook the error here because the materiality is not going to change if the district court views this evidence, the determination as to whether or not this violation, this suspension was material in this particular instance is not going to change. It's not going to change because, as you pointed out, Judge Jordan, the evidence, the bulk of the evidence against this defendant were his exchanges with Agent Hire with regard to his intent to have sexual activity with an 11-year-old child. It's not going to change. I know, but he asked for an evidentiary hearing. The district court denied an evidentiary hearing, understandably, I think, because it was looking at a weight of the evidence motion, and why is it going to hear the evidence it already heard at trial under a weight of the evidence claim? All you have to do is review the evidence at trial, see if it was against a manifest weight of the evidence, and take into account the alleged failure to disclose. But it did not evaluate the request for an evidentiary hearing, understanding that it was a Brady claim, a Giglio claim, not a weight of the evidence claim. How are we supposed to exercise discretion on whether to grant or not grant an evidentiary hearing? Well, first, it was abundantly clear the nature of the newly discovered evidence. In all the cases, whether the evidence that Agent Hire had been suspended by the FBI should warrant a new trial in this case. So that part of it is abundantly clear. Is there more? I'm sorry? Is there more to this, or is that all? And how do we know? What I'm saying is that the Brady violation was the only thing that was before the district court. And in their request, in their motion for new trial, they just do a blanket request for an evidentiary hearing. They ask for the opportunity to allow for discovery. But they knew that what we're talking about was a violation of FBI policy. And they never specifically asked the district court to even consider in camera the evidence, the underlying evidence with regard to how this came about, how it was resolved. Put yourself in a defense lawyer's position. After trial, you are told that you now have evidence that you should have been given before trial. And a defense lawyer is going to be skeptical that he now has everything that he should have had. He's going to want to make sure, he or she is going to want to make sure, that there's nothing else out there and that nothing else has been left behind because there was a failure in the system to turn something over. That lawyer's not going to take the government's assertions at face value, oh, here's what we have. We mistakenly didn't give this to you. But that's really all there is. There's nothing else. Take our word for it. Any defense lawyer worth his or her salt is going to want to at least inquire of somebody at a hearing to make sure there's nothing else. So my question to you is, without an evidentiary hearing, how do we know that there's nothing else? First, they just make a blanket request for an evidentiary hearing. They don't even ask for the underlying something else. They didn't ask for, in other instances, in the correspondence that we included that's in the record, they asked for the underlying file and one of the magistrate judges reviewed it and that magistrate judge said that I find that the government has been forthcoming and transparent with regard to its representation as to how this came about and how it was resolved. They didn't ask for that here.  You had a question? No, I didn't because I was going to interrupt you and I shouldn't have done that. Well, I don't want to interrupt you either. No, that's okay. Okay. Proceed. I want to make sure I understood what you just said. Yes, Your Honor. They found these documents because a public defender got them in another case and you're talking about that other case, the magistrate judge reviewed the underlying records. Is that what you're talking about? Yes, that's what I'm talking about. It's not in this case. Yes, but I make the point to say that if— They didn't ask for the documents here. Exactly. They did in the other case. The magistrate judge reviewed them in camera and said this is all there is. It's all about use of a home computer, which violates policy. Yes, and that there was no dishonesty. There was nothing more than reckless, negligent conduct. I wondered if this evidence would even be admissible if it came in because it's a violation of using the home computer. What is your position in that? I know there's an issue here about that. And that's another issue with regard to materiality. The evidence has got to come in for there to be a difference in this case. What they're asking this court to do is to send this back to give them an opportunity to undermine the confidence of a duly returned verdict in this case based upon evidence which is not going to change. And if they can't articulate and they haven't articulated really a basis for admission of this evidence, then it's not going to change the result. He wouldn't just be able to come in there and ask agent hire, well, what about this if he can't find a mechanism for doing that within the federal rules of evidence? You're telling me that that isn't impeachment evidence? Now, he may be stuck with an answer. Whether or not the results of the investigation can themselves be introduced is a whole different matter under the 600 set of rules. You're telling me that if your case agent was disciplined for misconduct in the same type of investigation that was at issue here, he cannot even be asked that question during cross-examination? Have you been disciplined for misusing your computer during child sex conduct investigation? Of course, if the agent says no, then maybe there's another problem. Maybe there's nothing else admissible and you're stuck with the answer. But he can't even ask that question? There's a question as to whether or not that's even relevant in this particular instance. It goes to his credibility, right? It goes to his thoroughness. It goes to his following of rules, right? You're saying he can't ask that question. That's your perspective? Assuming that he could. No, I'm asking you, can he ask, because that was Judge Hall's question, whether any of it is admissible. So I want to follow up. Do you think he can ask that question of the agent? Yes. I was talking about the underlying documents that he says he wants to get. Yes. Any of those documents. Yes. And assuming that he would even be able to ask the question, we still get back to where we started, which is this is simply not material. It's not material because, as you've just said, Judge Jordan, the intent is the issue here. The intent comes through in the 125 text messages that were exchanged between Hire and Sam, who's Defendant Stallman. The intent comes through with regard to his Craiglist ad where he says, I'm a married white guy looking for a young-looking girl to play out some fantasies. The intent comes through with regard to everything that he admitted when he was arrested. He admitted that he exchanged the text messages over about 8 to 12 weeks. He admitted that the text messages addressed sexual contact with an 11-year-old child. He admitted he even started spinning this whole thing with regard to whether or not this was a woman because he admitted that he thought that he was walking to a sting operation. So he's got to say something. So he admitted that he thought it was a sting operation. He admitted that he came anyway. He spun this story about this adult woman. But then when Agent Hire challenged him on that, he said, we were only talking about a woman. We never said anything about anybody else but a woman. There's evidence in this record where Agent Hire says just before they were supposed to meet, he says, I'm tucking my child into bed. That doesn't sound like an adult woman. He admits all of those things. He comes to the place where he's supposed to be. He comes at the time he's supposed to be there. He comes in the vehicle he told them he was going to be in. He's wearing a Teenage Mutant Ninja Turtle shirt, which is something that would arguably be attractive to a child, not an adult woman. He also testified, told the jury, this is my theory. I was just talking to Agent Hire. I thought what I was going to do was act out a fantasy with a grown man and a woman pretending to be a child. Has the institutionally, has the government figured out where the mistake was made in this case in not turning this over? I believe so. It's not good when the defense has to fish it out in another case. I agree with that. I totally agree with that. Although untimely, they didn't have to fish it out from some other source. We did turn it over. I know the government behaved correctly after it found out, but there should have been some fail-safe mechanism early on to make sure that that didn't occur. I agree, but I think that that's what happens when you have human beings in the system. And this doesn't boil down, as Mr. Langs said to Agent Hire's disciplinary background, being the star of this case. Judge Mendoza was quite clear in his order that the credibility here was the text messages. That's where the credibility comes from. That's where the credibility lies. The weight of the evidence standard was, of course, the inappropriate standard to apply. We admit that, but we also submit that if this court would apply the correct standard, looking at the materiality of the evidence that we presented in this case, that there's no need to send it back even for an evidentiary hearing. There's no need to send it back for any additional discovery. We provided a substantial case which is just not subject to attack by the defendant with regard to this minor perilous, reckless, which is what the FBI said about it, active indiscretion on the part of the investigating agent. We would ask that the court affirm both in the 17 appeal and the 18 appeal. Thank you very much. Thank you, Your Honor. I hope—excuse me for being verbose. I know I talk quickly. I get excited and enthusiastic about these things. I want to try to get out a lot that I can. In terms of rebuttal, I'd like to clarify just a couple of procedural matters. Number one, yes, there was a separate and distinct criminal matter. That was the case of St. Kesken in which all of this was first disclosed. In that particular case, Mr. Kesken, I believe his name was, he had already pled, and it was post plea that he had come to the attention of these types of matters and asked to move to compel in light of Brady and a Rule of 16 violation in that matter, and the government disclosed a number of these issues there. Ultimately, the magistrate judge in that case said no. I think in terms of what Judge Hall is thinking about, this isn't Brady material. It wouldn't have been admissible at trial, and hence he denied Mr. Kesken's ability to look at the underlying. He called it the primary principle. Thank you for clarifying. That helps me. Okay. Secondly, flowing from that, in terms of the letters that my office received, the Federal Defender's Office received, we got those back in November of 2017 while Mr. Stallman's direct appeal was pending. The initial brief in what I call Appeal Number 17 was filed. During the pendency of that, we were engaged in communications, as indicated by my pleadings below, with the government. And then in January of 2017, the government came to a conclusion, look, that's it. We're not talking about this any further. We've disclosed the information. We'll refer you to Mr. Kesken's case and the magistrate judge's order in that matter, so we're done. Based on that, I went ahead and filed my motion for new trial in the district court before Judge Mendoza. I specifically asked for both Brady relief and a Rule 16 discovery relief in this instance. I asked for the ability to look at the underlying materials in camera review in that process. But again, the overarching argument was materiality. We should have had this information ahead of trial in this case because, as Judge Jordan pointed out, ultimately, say, for example, again, I'll use that notion.  As Judge Mendoza looks at it and says, no, you don't get the underlying materials. You have sufficient information. I move in limiting before trial to say, listen, I'm going to ask Agent Heyer about his disciplinary background. Can I do that? If he says no, I have an issue for appeal. If he says yes, you can ask. But you might be stuck with his answer. We get up on cross-examination after his direct examination. I ask Agent Heyer, hey, Agent Heyer, isn't it true that you were subject to disciplinary review by the FBI for violating FBI policy, for which at any point in terms of his testimony, and I think it's DOC 75 in this instance, that is the excerpt of his testimony. At any number of points, he opened the door to that type of cross-examination because, for example, I think if I recall correctly, he talks about following FBI policy, his training and experience, his years with the Violent Crime Against Children Task Force, particularly in terms of the interview in this case where he says, I followed FBI policy because FBI policy mandates that I not record my interview. So we have notes. I'm asking questions of Mr. Stallman. Someone else is taking notes. I think in this case it was Jason Kaufman. But there, again, that opens the door to me, at least as a trial attorney, asking him questions about, well, let's talk about your violations of FBI policy. If he says no, I was never subjected to disciplinary review, as opposed to saying yes, then we might engage in that and at least give me the opportunity to argue credibility in front of the jury in closing argument. If he says no, then I move for admission of that type of underlying principle evidence under either 607 or 608B. There are a series of events that could have played out as you indicated. But at the end of the day, the majority of the evidence against your client is paper evidence or technology-based evidence. Absolutely. No, which flows into my second issue in terms of my appeal number 17 because the first – I will call it the first 50 percent of his testimony. Agent Heyer was impermissibly giving his interpretation of what was going on here. He was relying on his background and training, if you will, and his exposure to these types of cases to say, hey, listen, when I read that email, I interpret that email to mean he's thinking he wants to do this. Well, now he's opining and commenting on the men's radio or state of mind of Mr. Stallman. That's impermissible. You can't do that. So the interpretation, the fact-finding function of the jury, the province of what the jury is doing in this case in terms of the email is how do we accept this as proof of this person's mens rea because in this instance, obviously Agent Stallman testified at trial and explained that. This was all role-playing, and he subjected himself to cross-examination. He subjected himself to having his testimony allowed as subjective evidence of his guilt. Here, in this instance, we have a mountain's worth of credibility determination in terms of who are we going to believe, the government's theory of prosecution or Mr. Stallman's explanation as to what's going on here. In this instance, our relief, I see that my time is running out, I would suggest procedurally the best practice in this case would be to remand the case to the district court, ask for an in-camera review, ask for the ability to look at these things, grant a meaningful opportunity to create a record for appeal should the district court deny them relief, and in this instance, I would suggest that the materiality of this type of information renders itself to affording Mr. Stallman a new trial. All right, thank you both very much. Thank you.